UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CASLEY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 25-11068-LTS |
| | ) | |
| CITY OF BOSTON et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON MOTIONS TO DISMISS (DOC. NOS. 63, 85, 88)

July 7, 2026

SOROKIN, J.

Casley Bailey, representing himself, brings this lawsuit against the Massachusetts Civil

Service Commission, Leah Barrault, the City of Boston, and eight other defendants, alleging

various violations of federal law.  The three defendants Bailey served seek dismissal of all claims

against each of them.  Bailey has opposed two of the motions to dismiss and sought more time to

serve some of the defendants.  For the reasons set forth below, all three motions to dismiss are

ALLOWED, and this case is DISMISSED in its entirety.

I.    BACKGROUND[1]

Bailey worked as a firefighter for the Boston Fire Department ("BFD") for more than

twenty years.  Doc. No. 13 at 3.[2]  He was fired in February 2025, and this lawsuit is one of

several efforts to contest his termination.

---

[1] The Court recounts those allegations that are pertinent to the pending motions, construing
Bailey's pleadings liberally and accepting as true all well-pleaded facts.  Erickson v. Pardus, 551
U.S. 89, 94 (2007).
[2] Citations to "Doc. No. ___" reference items filed on the electronic docket ("ECF") in the action
that is the subject of this Order; pincites are to the page numbers in the ECF header.

While on duty on December 17, 2024, Bailey struck his head on a steel fixture while retrieving his helmet from the fire station's boiler room.  Id. at 5.  Bailey reported the injury to his supervisor, who documented the incident and notified Boston EMS; they responded and evaluated Bailey.  Id.  Bailey completed an official injury report, listing Tufts Medical Center as the facility where he would seek treatment.  Doc. No. 1-8 at 17.[3]  BFD placed Bailey on leave for the rest of his tour of duty.  Id. at 18.  Bailey refused transportation from Boston EMS and sought medical treatment at a location he deemed more convenient than Tufts, driving himself there from the fire station.  Doc. No. 13 at 5–6.  He was diagnosed with a head injury and concussion symptoms.  Id.  Pursuant to a medical release form BFD physician Jonathan Holder completed the day after the incident, BFD obtained copies of Bailey's Boston EMS records.  Id. at 6–7.  Though Bailey's name and signature appear on the form, Bailey alleges he either did not sign the form or does not recall having signed it.  Id. at 5.  Holder has represented that he wrote Bailey's name and date on the form, but that Bailey provided his own signature.  See Doc. No. 1-4.

After an internal investigation, BFD learned that Bailey had not sought treatment at Tufts Medical Center, as he indicated he would on his injury report.  Doc. No. 1-8 at 20.  Boston EMS reported to BFD that Bailey had denied various symptoms including any loss of consciousness and dizziness during his brief evaluation at the station.  Doc. No. 1-8 at 19; Doc. No. 1-9 at 4.

---

[3] The Amended Complaint references the December 2024 injury and its aftermath, BFD's subsequent investigation and disciplinary proceedings that followed, and the letter terminating his employment.  Accordingly, the Court considers the injury report, investigative materials, hearing findings, termination letter, and associated records as documents incorporated by reference and integral to the operative pleading, but not for the truth of any disputed factual findings therein.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007); Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993).  Some of these documents are before the Court as exhibits to Bailey's various submissions.

Bailey disputes these findings and maintains that BFD improperly obtained this information. Doc. No. 13 at 6–7. Upon learning of the information provided by Boston EMS, BFD's Acting Deputy Chief Richard Francis filed three disciplinary charges against Bailey, alleging violations of rules concerning absences, conduct, and statements made in matters affecting the department. Doc. No. 1-8 at 21.

A departmental hearing on the charges was held on February 4, 2025. Id. at 1. Bailey, who is a member of IAFF Local 718, the union representing Boston firefighters ("Union"), attended the hearing accompanied by Union representatives and the Union's attorney. Doc. No. 13 at 3; Doc. No. 1-8 at 1. The Hearing Board found just cause to discipline Bailey for untruthfulness and conduct prejudicial to good order, though Bailey alleges these findings resulted from a fundamentally flawed disciplinary process and the Union's failure to fairly represent him. Doc. No. 13 at 6–7, 20–21; see also Doc. No. 89-1 at 1.

Based on the Hearing Board's findings, BFD terminated Bailey by letter dated February 12, 2025. Doc. No. 89-1 at 9. The letter, signed by Francis, recounted that Bailey had been disciplined and suspended fourteen times during his career as a firefighter, a characterization Bailey generally disputes. Id. at 6; see Doc. No. 13 at 20 (alleging Francis had "inflate[d] the appearance of misconduct" arising from Bailey's "disciplinary history" by "deliberate[ly] omi[tting] mitigating appeal outcomes" but not otherwise challenging number of infractions charged).

Bailey appealed the termination decision to the Civil Service Commission. Bailey v. Bos. Fire Dep't, No. D1-25-0146 (Mass. Civ. Serv. Comm'n). The Commission has held multiple hearings but, as of the parties' last submissions addressing the appeal, it had not yet

3

released a decision.  Id.; see Doc. No. 13 at 19–20 (describing hearings that occurred before federal suit was filed).

On February 12, 2025—the day he was fired—Bailey filed a complaint in Suffolk Superior Court seeking a preliminary injunction preventing the City from terminating his employment.  Doc. No. 26-2 at 2.[4]  After a prompt hearing, the Superior Court denied relief because Bailey had not exhausted his administrative remedies before filing his complaint.  Id. at 3.  In other words, Bailey was required to pursue and complete his appeal to the Commission before seeking review in the state courts.  Bailey timely appealed to the Massachusetts Appeals Court, which eventually affirmed the Superior Court's judgment.  See Bailey v. Bos. Fire Dep't, 273 N.E.3d 1221, 2026 WL 20913, at *1 (Mass. App. Ct. Jan. 5, 2026) (noting also that request to enjoin termination that had already occurred was moot).

On March 21, 2025, Bailey filed a second complaint in Suffolk Superior Court, seeking an injunction that would require the BFD to restore him to his employment.  Doc. No. 26-3 at 3.  After another prompt hearing, the Superior Court denied Bailey's request because of his admitted failure to exhaust administrative remedies.  Id. at 4.  Bailey requested and was denied review of this decision by a single justice of the Massachusetts Appeals Court.  Doc. No. 26-4 at 2.

Bailey then turned his attention to this Court, filing a Motion for a Temporary Restraining Order and a Preliminary Injunction without an accompanying complaint on April 22, 2025.  Doc. No. 1.  The motion sought the same injunctive relief Bailey had failed to obtain in state court.  This Court directed Bailey to file a complaint and pointed him toward the governing pleading rules.  Doc. No. 7.  Bailey filed a Complaint on April 29, Doc. No. 9, then amended it

---

[4] The related state-court filings and docket materials are matters of public record properly considered when resolving a motion to dismiss.  Watterson, 987 F.2d at 3–4.

on June 20 before having served it, Doc. No. 13.  The Amended Complaint remains the operative

pleading.  It was accompanied by an Amended Motion for a Temporary Restraining Order.  Doc.

No. 12.  On September 16, 2025, this Court denied Bailey's motion, finding he had not

established a likelihood of success on the merits.[5]  Doc. No. 55 at 10.

The Amended Complaint names as defendants the Commission, Leah Barrault (the

Union's lawyer), the City of Boston, Holder, Deputy Chief Francis, IAFF Local 718 (of which

Bailey was a member), three Union officials, IAFF District 3, and the Professional Fire Fighters

of Massachusetts.  Doc. No. 13 at 1.  Bailey alleges that all of the defendants violated his due

process rights; that Holder and Francis violated his right to informational privacy; and that all

defendants retaliated against him in violation of his First Amendment Rights.  Id. at 21–26.  He

claims the Union and its representatives breached the duty of fair representation under federal

law, and that there was a conspiracy among all the defendants to violate Bailey's civil rights.  Id.

at 28–30.  He accuses the Union defendants of "systemic racial discrimination" and alleges that

Francis faces "cat's paw" liability for his allegedly discriminatory termination.  Id. at 30–31.

The Commission, Barrault, and the City have been served, and each has moved to

dismiss.  Bailey has opposed two of the motions, and the time for responding to the third has

long passed.  The Court resolves the motions on the papers, then addresses the status of the

remaining defendants, none of whom Bailey has served.

---

[5] On September 25, Bailey appealed several of this Court's orders, including the order denying
his Motion for a Temporary Restraining Order, to the U.S. Court of Appeals for the First Circuit.
Doc. No. 75.  This Court reminded both parties that proceedings would continue while the appeal
is pending.  Doc. No. 80.  It remains pending now.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not "accept the complaint's legal conclusions or naked assertions devoid of further factual enhancement." Soto-Torres v. Fraticelli, 654 F.3d 153, 156 (1st Cir. 2011) (citation modified).

Here, Bailey brings his lawsuit without the assistance of counsel.  "On a motion to dismiss, the court must read a pro se plaintiff's allegations liberally and apply a less stringent standard to a pro se pleading than to a complaint drafted by counsel." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Haines v. Kerner, 404 U.S. 519, 520–21 (1972)). "Nonetheless, pro se plaintiffs must comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the court lacks jurisdiction over the claims or the parties and when the complaint fails to even suggest an actionable claim." Id.

## III.    DISCUSSION

The Commission, Barrault, and the City each raise distinct challenges to Bailey's claims against them.  The Court will first address the Commission's motion, which Bailey timely opposed, and explain why the Commission is immune from suit and Bailey's proposed amendment to add individual Commissioners as parties would be futile.  Next, the Court will turn to Barrault, whose motion Bailey also timely opposed, but against whom Bailey has not plausibly stated any claims.  Then, the Court will evaluate the City's motion, to which Bailey filed no response.  Finally, the Court will explain why Bailey's failure to timely serve the other eight defendants warrants dismissal of his claims against them.

6

A.  The Commission

The Commission advances two grounds for dismissal.  First, it argues that any claims against it are barred by the Eleventh Amendment.[6]  Doc. No. 64 at 4.  Alternatively, the Commission argues that Bailey has not plausibly stated any claim against it under traditional Rule 12(b)(6) principles.  Id. at 5–6.  Bailey advances numerous arguments in opposition to the Commission's motion, Doc. No. 84, but none save his claims against the Commission.

The Commission's first argument is dispositive.  The Eleventh Amendment bars suits in federal court against a state or its agencies or departments, regardless of the relief sought, absent a waiver (i.e., consent by the state to suit).  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98–100 (1984); O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000); U.S. Const. amend. XI; cf. Lopez v. Massachusetts, 588 F.3d 69, 72, 75–76 (1st Cir. 2009) (noting Commission is state agency and assessing immunity defense of related state agency).  Because the Commission is a state agency—a fact Bailey does not dispute, nor could he—it is constitutionally immune from suit—a legal conclusion Bailey also does not seriously challenge.  All of Bailey's claims against the Commission must be dismissed on this basis alone.

Bailey attempts to circumvent the Eleventh Amendment by suggesting in his memorandum that he could amend his pleading to add one or more individual members of the Commission as defendants here.  Doc. No. 84 at 2.  But this proposal faces a series of hurdles which render it an exercise in futility.

---

[6] The Commission also correctly notes that sovereign immunity bars Bailey's claims against it insofar as he seeks monetary damages.  Doc. No. 64 at 4.  Bailey responds by suggesting he seeks no such damages from the Commission.  Doc. No. 84 at 2, 10.  Because the Eleventh Amendment poses an insurmountable obstacle here, the Court need not further address the alternative and more limited form of immunity.

7

First, claims against any individual Commissioner in their official capacity could not support claims for money damages. See Pennhurst, 465 U.S. at 120; Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 35–36 (1st Cir. 2026). Though such official-capacity claims could theoretically ground requests for prospective injunctive relief, Clemente Props., 165 F.4th at 36, the now-operative pleading does not identify any such relief that would be awarded against the Commission, Doc. No. 13 at 32–33 (specifying forms of prospective relief that would require action by the City or Bailey's union, but not Commission). Bailey has not submitted a proposed amended pleading spelling out claims against individual Commissioners, and the references within his memorandum to prospective relief he might seek from them amount to directives from this Court to the Commission about how to resolve evidentiary and procedural questions within the purview of that tribunal. E.g., Doc. No. 84 at 2–3 (citing "forward-looking relief" such as "authentication of disputed evidence, neutral record access, ADA court accommodations, and narrowly tailored discovery," as well as "interim non-use of disputed evidence").

To the extent these deficiencies do not doom the amendment Bailey proposes, his failure to plausibly allege any viable claim that could be pursued against individual Commissioners would finish the job. The Court will briefly explain, taking each claim brought against the Commission in turn.[7]

Bailey alleges procedural and substantive due process violations by all named defendants in the first count of his pleading. Doc. No. 13 at 22–24. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023); accord

---

[7] Four of Bailey's seven claims are not alleged against the Commission. See Doc. No. 13 at 24–28, 30-32 (alleging other defendants violated Bailey's "right to informational privacy," their duty of fair representation, and Bailey's right to be free from racial discrimination).

Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005).  Such a "claim is 'complete' only

when 'the State fails to provide due process,'" not "when the deprivation occurs."  Reed, 598

U.S. at 236 (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).  But Massachusetts provides

ample post-deprivation remedies, including judicial review in the Superior Court of any

unsatisfactory decision by the Commission.  See Cronin v. Town of Amesbury, 81 F.3d 257, 260

(1st Cir. 1996) (holding Massachusetts law provides public employees adequate post-deprivation

remedies culminating in right to appeal to state trial court).  Indeed, Bailey is pursuing relief

through the process supplied by the Massachusetts Civil Service Law—via an unfinished, multi-

day, evidentiary hearing before the Commission.  That process is not yet complete.  Accordingly,

Bailey's procedural due process claim fails as a matter of law, and it would similarly fail against

any individual Commissioners he named via an amended pleading.  See also Doc. No. 55 at 4–5

(assessing claim in context of Bailey's motion for temporary restraining order and finding it

unlikely to succeed).

His substantive due process claim is likewise deficient.  Such a claim is available only "in

truly horrendous situations," where a plaintiff alleges "governmental action that shocks the

conscience."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008); see Hasenfus v. LaJeunesse,

175 F.3d 68, 72 (1st Cir. 1999) (requiring "pungent facts" describing "truly outrageous,

uncivilized, and intolerable" behavior).  Bailey has alleged no such facts here.  Though the loss

of his job and associated benefits as the result of a disciplinary process he asserts was unfair in

various ways was no doubt subjectively shocking to Bailey, more is required to sustain a

substantive due process claim, even at the pleading stage.  See Doc. No. 55 at 5–6 (assessing

claim in context of motion for temporary restraining order and finding it unlikely to succeed).

9

Bailey's remaining claims against the Commission fare no better.  His First Amendment retaliation claim, Doc. No. 13 at 25–26, would require plausible allegations that each defendant acted with "retaliatory animus" in subjecting Bailey to some adverse action that would not have occurred but for his protected activities.  Nieves v. Bartlett, 587 U.S. 391, 398–99 (2019); Gattineri v. Town of Lynnfield, 58 F.4th 512, 514–15 (1st Cir. 2023).  Such allegations are lacking here generally, and concerning the Commission in particular.  Bailey's pleading does not connect the dots between the protected activity he alleges and the accusation of "coordination to suppress transcript access and evidence" he levels against the Commission, except in conclusory fashion.  Doc. No. 13 at 25–26.  Nor does it plausibly ascribe retaliatory animus to the Commission (or any of its members).  Id.  The only factual allegations directed toward the Commission appear on two pages of the operative pleading.  Id. at 19–20.  They concern Bailey's belief that expert reports he had procured in an effort to show his signature on the medical release was forged had been improperly excluded by the hearing officer, and his assertion that transcripts of the Commission's proceedings were incomplete.  Id.  Such allegations are not enough to propel a First Amendment retaliation claim against the Commission or its members beyond the pleading stage.[8]

---

[8] As the Court noted when denying Bailey's motion for a temporary restraining order, the record does not necessarily support Bailey's allegation of forgery.  Doc. No. 55 at 6; see also id. at 7–8 (finding retaliation claim unlikely to succeed).  Indeed, it appears undisputed that Holder printed Bailey's name and the date on the relevant release form, in line with his ordinary practice.  Doc. No. 1-4.  Neither of Bailey's experts opine that Holder authored the signature on the form, and both supply only tepid opinions concerning the possibility that it was forged.  See Doc. No. 1-3 at 4–5; Doc. No. 60-5 at 6, 13.  For his part, Bailey has at times claimed not to recall whether he signed the form but stopped short of denying that he did.  E.g., Doc. No. 13-4 at 9.  Even accepting for present purposes the allegation that his signature was forged, Bailey has not plausibly shown how that fact supports any of his claims against the Commission.  He has not tied any evidentiary rulings by the hearing officer—regarding the release or otherwise—to a retaliatory motive, nor has he completed the state-court process available for challenging such

The final claim against the Commission is a conspiracy with the other defendants to violate Bailey's civil rights under 42 U.S.C. § 1985.  To the extent this claim reiterates Bailey's due process or First Amendment retaliation claims, it fails for the same reasons those claims did. See Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (including among elements of § 1985 claim "a deprivation of a constitutionally protected right").  Further, Bailey's scant factual allegations concerning the Commission do not plausibly connect it (or its members) to a conspiracy at all, let alone one whose purpose is "to deprive [Bailey] of the equal protection of the laws." Id.

Accordingly, the Commission's motion is ALLOWED.  Because Bailey's proposal that he be permitted to amend his pleading to add individual Commissioners as defendants would be futile, Counts I, III, and V are DISMISSED as to the Commission.

B.  Attorney Barrault

Though Bailey levels numerous allegations against the Union and its officials, the only Union-related defendant he has served is Barrault, the Union's outside counsel.  As to Barrault, certain fundamental principles doom Bailey's claims.

For starters, Barrault is a private lawyer.  Neither her profession nor her representation of a municipal-employee labor union renders her a state actor.  She cannot generally be held liable via 42 U.S.C. § 1983 for actions taken in the scope of her work.  West v. Atkins, 487 U.S. 42, 48 (1988); cf. Polk Cnty. v. Dodson, 454 U.S. 312, 324–25 (1981) (explaining state-employed attorney does not act under color of state law when performing traditional functions of counsel). The operative complaint does not plausibly allege Barrault (or the Union she represented) acted

---

rulings.  Therefore, resolving whether the release was forged is not, as Bailey suggests, a threshold dispute that precludes dismissal under Rule 12(b)(6).  See Doc. No. 84 at 14–15.

under color of state law or otherwise functioned as a state actor for purposes of § 1983 in the context of the events at issue in this lawsuit.  See Mead v. Indep. Ass'n, 684 F.3d 226, 231 (1st Cir. 2012) (emphasizing burden plaintiff faces to plausibly allege "rare" circumstances in which "private party's acts constitute state action").  Thus, to the extent the first three claims in the amended complaint are directed at Barrault (via Bailey's references to "Union defendants"), they cannot proceed against her.

Bailey's § 1985 conspiracy claim cannot salvage his § 1983 claims against Barrault, nor can it independently proceed beyond the pleading stage.  See Doc. No. 87 at 12–14 (referencing "ex parte communications" and "coordination" between Barrault and City).  This is because Bailey has not plausibly pled the essential elements of a conspiracy including Barrault.  For the most part, Bailey accuses Barrault of  "Professional Malpractice" in the context of the grievance and disciplinary processes at issue here, including allegations that she failed to pursue certain issues on his behalf, failed to appear at a hearing, and labored under a conflict of interest due to her simultaneous representation of multiple unions.  Doc. No. 13 at 11–14, 18.  He also references in cursory fashion "Ex Parte Communications" Barrault had with the City and "hostility" she directed toward Bailey.  Id.  These allegations do not make out a viable § 1985 claim; they do not plausibly allege the requisite agreement or discriminatory animus on Barrault's part.[9]  See Parker v. Landry, 935 F.3d 9, 17–18 (1st Cir. 2019) (listing elements).  Bailey's failure to plead "in some detail" any "joint action" or "conspiracy" tying Barrault to a state actor via his conspiracy claim is fatal to both his § 1985 claim and his § 1983 claims against

---

[9] Though Bailey gestures toward racial discrimination as a motive, he has not linked Barrault to any alleged instances in which Union members of different races were treated differently.  Nor does his cryptic suggestion that Barrault, by describing his injury as "bumping his head and driving to Brockton," employed "Racially Coded Language" suffice.  Doc. No. 13 at 14.

Barrault.  Cf. Davis v. Theriault, No. 22-cv-275-JDL, 2023 WL 5628193, at *50 (D. Me. Aug. 31, 2023) (canvassing First Circuit precedent governing similar claims).

The two remaining claims Bailey brings against Barrault also suffer from fatal pleading deficiencies.  In Count IV, Bailey asserts that the "Union defendants," including Barrault, breached their duty of fair representation under "federal labor law."  Doc. No. 13 at 26–28.  There are two problems with this claim.  First, as Bailey acknowledges, the Union at issue here is a public-sector union "organized under the laws of Massachusetts," representing municipal employees.  Id. at 3.  This means that neither the Union nor the conduct of its officials is governed by "federal labor law," which expressly excludes "any State or political subdivision thereof" from the definition of employers for purposes of the National Labor Relations Act ("NLRA").  29 U.S.C. § 152(2).  Bailey, therefore, cannot invoke the NLRA as a means of suing Barrault (or any of the other Union defendants).  See Tavares v. Trial Ct., 231 N.E.3d 351, 356 (Mass. App. Ct. 2024) ("The National Labor Relations Act does not apply to State employees.").

Even if the Court were to construe Bailey's claim as invoking Massachusetts's analogous public-sector labor framework, it would founder against Barrault (and any other Union representative) for a second reason.  Under Massachusetts law, union agents generally "may not be sued for conduct undertaken on behalf of the union."  Best v. Rome, 858 F. Supp. 271, 275 (D. Mass. 1994), aff'd, 47 F.3d 1156 (1st Cir. 1995); accord O'Keeve v. Dwyer & Duddy, P.C., 183 N.E.3d 437, 676 (Mass. App. Ct. 2022); Mass. Gen. Laws ch. 150E, § 5.  "Because [Bailey's] claims against [Barrault] are for actions [she] took as [an] agent of the union," his attempt to hold her civilly liable fails.  O'Keefe, 183 N.E.3d at 676.  The Union is "the sole source of recovery" for injuries such as those alleged by Bailey, and his "remedy for a breach of the duty of fair representation by the union or its agents" is the administrative process available

13

to public employees who wish to pursue "prohibited practice charges" with the Massachusetts Department of Labor Relations. Id. (citation modified); cf. Montplaisir v. Leighton, 875 F.2d 1, 5 (1st Cir. 1989) (finding it would "defy logic to allow disgruntled union members" to sue public-sector union agents for breach of NLRA-imposed duty where federal law precludes such claims against union itself). Thus, Bailey has failed to state a claim against Barrault for breaching any duty of fair representation he was owed by the Union, whether under state or federal law.

Count VI, which alleges race discrimination in union representation, also fails against Barrault as a matter of law. Throughout this claim, Bailey refers generally to the "Union defendants," without specifying which defendant within that group did what, and without identifying any conduct attributable to Barrault. See Doc. No. 13 at 30. This fails at the outset to provide a "short and plain statement" showing that Bailey is entitled to relief from Barrault on the basis of this claim. See Fed. R. Civ. P. 8. Moreover, to state a claim under 42 U.S.C. § 1981, Bailey must plausibly allege that Barrault engaged in "purposeful [race] discrimination." Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). This he has not done. Although Bailey cites statistical disparities and differential treatment of other firefighters, he does not plausibly tie those generalized allegations to any conduct or discriminatory purpose by Barrault. Nothing in his opposition memorandum remedies this deficiency. See Doc. No. 87 at 7–11, 14–15.

Accordingly, all of Bailey's claims against Barrault are DISMISSED.

C. The City of Boston

The City moved to dismiss on October 9, 2025. Doc. Nos. 85, 86. Bailey's response to the motion was due within fourteen days (i.e., by October 23). D. Mass. L.R. 7.1(b)(2). Though

14

Bailey timely opposed the other two motions to dismiss—and made two other filings after the City filed its motion and before the deadline for his opposition, Doc. Nos. 90, 92—he did not respond to the City's motion. To this day, he has neither opposed the motion nor sought additional time in which to do so. Bailey's failure to respond to the City's motion means he has waived any arguments he might have advanced to contest the City's position. The Court, however, looks beyond this failure to assess whether the operative pleading states any claim against the City. See Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004). This review confirms that dismissal is warranted, as the City has argued.[10]

Two of Bailey's claims against the City arise under 42 U.S.C. § 1983. Both fail because Bailey has not plausibly alleged that his rights to due process and free speech were violated due to the existence of, and the City's adherence to, a municipal policy or custom. See Monell, 436 U.S. at 690–91. Nor does Bailey allege facts plausibly supporting a failure-to-train or -supervise theory, which would require a showing of deliberate indifference. Connick v. Thompson, 563 U.S. 51, 59 (2011). Such allegations are necessary to pursue a claim against the City under § 1983; because respondeat superior liability is unavailable through § 1983, allegations of discrete misconduct by individual City employees (such as Francis or Holder) do not suffice to state a claim against the City itself. Monell, 436 U.S. at 690–95.

---

[10] The Court addresses in the text only the three claims Bailey has asserted against the City. Counts II (§ 1983, privacy), IV (duty of fair representation), VI (race discrimination in union representation), and VII ("cat's paw" liability) are not facially alleged against the City. See Doc. No. 13 at 24–28, 30 (naming Holder, Francis, and Union defendants in Count II; Union defendants in Counts IV and VI; and Francis in Count VII). To the extent any of these claims can be reasonably viewed as being alleged against the City, they would fail due to an absence of plausible allegations that the City (or BFD) maintained a custom, policy, or practice that caused a violation of Bailey's constitutional rights to privacy, see Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 665, 690 (1978), among other reasons, e.g., Doc. No. 89 at 7–8 (advancing other merits challenges to privacy claim). The same municipal-liability defect impacts the claims Bailey has alleged against the City, as the Court will explain in the text.

Even if the operative pleading could be construed as plausibly alleging an unconstitutional municipal custom or policy (and it cannot reasonably be so construed), Bailey's due process and First Amendment claims against the City would fail on the merits for the same reason they failed against the Commission or any individual Commissioners.  His procedural due process claim would require plausible allegations that available state processes are inadequate. Reed, 5989 U.S. at 236.  His substantive due process claim would require plausible allegations of conscience-shocking conduct by the City.  Clark, 514 F.3d at 112.  And his First Amendment claim would require plausible allegations of retaliatory animus and a link between his firing and any protected activity.[11]  Gattineri, 58 F.4th at 514–15.  Bailey has supplied no such allegations here.  Counts I and III, then, cannot proceed against the City.

That leaves his civil-rights conspiracy claim under § 1985, which also fails for reasons explained above when addressing the Commission's motion.  Bailey has not plausibly alleged any agreement or meeting of the minds between the City and any other defendants to deprive him of a federally protected right, nor any overt act taken in furtherance of such a conspiracy.[12] Perez-Sanchez, 531 F.3d at 107.

---

[11] The only allegation of animus in Bailey's pleading that touches on these First Amendment elements is his assertion that Francis, whom Bailey has not served, "harbored discriminatory animus against [Bailey], as evidenced by [Bailey's] formal harassment complaint filed January 10, 2025, documenting a pattern of targeting and unfair treatment."  Doc. No. 13 at 31.  This allegation, without more, does not plausibly support an inference that the City acted with discriminatory animus.

[12] Though Bailey alleges in conclusory fashion that "the conspiracy was motivated by racial animus . . . as evidenced by the statistical disparity in union representation and coordinated timeline of retaliation," Doc. No. 13 at 29, this allegation is insufficient to establish the discriminatory animus required under § 1985 (or, for that matter, under § 1981).  Most of Bailey's allegations and argument describing a "conspiracy" and attempting to show animus or discriminatory intent via disparities in treatment of firefighters based on race take aim at conduct of the Union, which Bailey accuses of having defended him less vigorously than it did white firefighters accused of misconduct.  E.g., Doc. No. 13 at 28, 30.  Furthermore, his allegations do not support a finding that the comparators he identifies were similarly situated in all material

16

The City's motion to dismiss is, therefore, ALLOWED.

D.  The Remaining Defendants

With the dismissal of all claims against the Commission, Barrault, and the City, what remains are Bailey's claims against five individuals and three labor organizations.  The record establishes that Bailey has not served any of these defendants in accordance with the applicable procedural rules despite having been provided ample time to do so.  Recently, Bailey moved for more time to complete service, Doc. No. 105, a request the City has opposed, Doc. No. 107.

Summons issued on June 26, 2025, promptly after Bailey filed his Amended Complaint.  Doc. No. 15.  Along with the summons, the Court notified Bailey of the steps required in order to enlist the United States Marshal ("USMS") to effect service.  Doc. No. 17.  A month later, the Court "reminded" Bailey "of his obligation to serve all defendants in this case and to notify the Court when he has done so," directing Bailey's attention to prior directions concerning service and the relevant Federal Rule of Civil Procedure.  Doc. No. 21.

With the assistance of the USMS, Bailey timely served the Commission, the City, and Barrault.  Doc. Nos. 30, 31, 33, 34.  Though Bailey completed service paperwork for the five remaining individual defendants, the USMS filed returns reflecting that none of them were served.  Four could not be located at the addresses Bailey provided.  Doc. Nos. 35, 36, 38, 39.  As for the fifth, a service packet was left with a person identified as the individual's "co-worker" at his place of business.  Doc. No. 37 at 1.  There is no indication that the named defendant ever received the service packet and, as this Court explained previously, delivering the service packet in the manner described did not constitute proper service under the governing procedural rules.

---

respects, including disciplinary history (which, for Bailey, was significant) and nature of infractions (which, here, included untruthfulness).  See Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751–52 (1st Cir. 1996).

17

Doc. No. 51; see Fed. R. Civ. P. 4(e); Mass. R. Civ. P. 4(d)(1).  The record documents no further attempts by Bailey to serve any of these five individuals again, at other addresses or using other means.  There is no evidence of any effort to serve the three labor organizations at all.

Multiple orders entered in this case emphasized Bailey's obligation to serve each defendant in a manner authorized by Rule 4.  See Doc. Nos. 14, 21, 51, 80, 83, 91.  The Court twice extended the service deadline.  See Doc. Nos. 83, 97.  The final deadline set by the Court was November 10, 2025, Doc. No. 97, meaning Bailey had more than six extra weeks beyond the period contemplated by Rule 4(m) in which to effect service.  As to the eight defendants who have made no appearance in this case, he failed to do so.  Cf. Doc. No. 84 at 20 (acknowledging then-impending deadline and stating any service defects "have been or will be cured in good faith").

Not until June 19, 2026—long after the twice-extended deadline had passed—did Bailey acknowledge his failure to serve.  Doc. No. 105.  When he did so, he belatedly requested "an enlargement of time to complete service on three individual defendants—Deputy Chief Richard Francis, Dr. Jonathan Holder, and Jay Colbert."  Id. at 1.  By making this narrow request, Bailey implicitly conceded that he had not served—and no longer intends to serve—the other five defendants.  See id. at 7 (requesting deferral of "any Rule 4(m) dismissal of these defendants" (emphasis added)).  As such, the Court "must dismiss the action" as to the unserved defendants that are not addressed in Bailey's most recent submission.  Fed. R. Civ. P. 4(m).  His claims against the following defendants are therefore DISMISSED for failure to serve: Leroy Heyward, Samuel Dillon, IAFF Local 718, IAFF District 3, and the Professional Firefighters of Massachusetts.

As far as Francis, Holder, and Colbert are concerned, the Court has considered Bailey's submission and finds that he has not shown good cause for his failure to serve these three defendants.  Regarding Francis and Holder, Bailey essentially explains that he provided addresses to the USMS last year using publicly available information which turned out to be incorrect.  Doc. No. 105 at 3–4.  He does not identify how or when he learned the information was incorrect, nor explain his failure to re-attempt service using corrected addresses before now.  As to Colbert, Bailey notes that he directed the USMS to a workplace, rather than a "dwelling as required," though he explains neither the reason he chose the wrong "method" nor why it has taken him this long to re-attempt service using the right one.  Id. at 4.

In a section of his motion characterized as providing "good cause" for his failure to timely serve these defendants, Bailey submits he should be excused due to his status as "an indigent litigant proceeding in forma pauperis" who lacks "access to governmental databases, personnel records, restricted address information, or investigative resources available to the" USMS.  Id. at 5.  He suggests he did all that was required of him, and that "the remaining steps necessarily depended upon governmental actors exercising governmental authority."  Id.  In effect, Bailey blames the USMS for not independently investigating, locating, and serving these three defendants at locations other than those Bailey provided, when service could not be completed using the addresses Bailey identified.

That is not how this process works.  It is because of Bailey's status as a self-represented litigant proceeding in forma pauperis that he was permitted to enlist the aid of the USMS in the first place.  The USMS discharges its role in this context by attempting service at the location specified by the litigant.  Here, the USMS did just that.  When those efforts proved unsuccessful, the USMS reported to the Court and to Bailey, by completing the return forms for each

19

defendant, exactly what had happened when they attempted service using the addresses Bailey identified.  Doc. Nos. 36, 37, 38.  These returns were completed and docketed nearly a year ago, in August 2025.  Id.  It was then up to Bailey, as the plaintiff and the party obligated to ensure service consistent with all governing procedural rules, to seek corrected address information and re-attempt service, or to request additional time or guidance from the Court.  The Court reminded Bailey of his obligation in this regard several times.  See Doc. Nos. 51, 80, 91; see also Doc. No. 83.  Nevertheless, it appears Bailey took no further action until June 2026, ten months after the USMS notified him of the inability to serve these defendants, and seven months after the extended service deadline elapsed.

Nothing in Bailey's recent submission explains or justifies this delay or otherwise provides good cause for his failure to timely serve Francis, Holder, and Colbert.  In these circumstances, Bailey's motion (Doc. No. 105) is DENIED.  His claims against Francis, Holder, and Colbert are DISMISSED pursuant to Rule 4(m) for failure to serve.

IV.    CONCLUSION & ORDERS

For the reasons explained above, the motions to dismiss filed by the Commission, Barrault, and the City (Doc. Nos. 63, 85, 88) are ALLOWED, and all claims against those defendants are DISMISSED with prejudice.  All claims against the other defendants are DISMISSED due to Bailey's failure to timely serve them.

This resolves all claims against all defendants named in this action.  Accordingly, the Clerk shall enter a separate judgment of dismissal, with each party to bear its own costs and fees.

SO ORDERED.

   /s/ Leo T. Sorokin
United States District Judge

20